Argued June 21, affirmed in part; reversed in part, and remanded
October 2, reconsideration denied November 7, 1978, petition for
review denied January 16, 1979, 285 Or 1

BROWN et al, *Appellants,*
*v.*
LOBDELL, *Respondent.*
(No. 95-901, CA 9111)

DOTSON, *Appellant,*
*v.*
LOBDELL, *Respondent.*
(No. 98-599)

RAMSETH, *Appellant,*
*v.*
LOBDELL, *Respondent.*
(No. 100-044)

NORRED, *Plaintiff,*
*v.*
LOBDELL, *Defendant.*
(No. 100-043)
(Consolidated cases)

585 P2d 4

[ 397 ]

Kent B. Thurber, Oregon Legal Services Corp., Portland, argued the cause and filed the brief for appellants.

Walter J. Apley, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was James A. Redden, Attorney General, Salem.

Before Schwab, Chief Judge, and Thornton, Tanzer and Buttler, Judges.

TANZER, J.

**TANZER, J.**

■ The six plaintiffs[1] in these consolidated cases seek declaratory and injunctive relief against defendant's withholding part or all of their tax refunds as a setoff against debts owed to the state. The term "setoff" is used in its ordinary sense to mean the right which exists between two parties, each of whom is indebted to the other to apply the debts to one another by mutual reduction so that everything but the difference between the two is extinguished. Defendant is Director of the Department of Revenue, which withholds the refunds under a procedure known as SOIL (an acronym for set off liability) and credits them to the alleged taxpayer-debtors' accounts with various state agencies.

The trial court denied plaintiffs' motion for certification as a class action, and the case was tried on stipulated facts. The trial court concluded that setoff was a proper means for the state to collect the debts, denied the requested relief, and dismissed the complaints. On appeal, plaintiffs renew their contentions that the withholding of their tax refunds pursuant to the SOIL procedure is unauthorized by statute, violates defendant's statutory duties to pay tax refunds and protect confidentiality of tax returns, and infringes upon plaintiffs' constitutional rights to due process and equal protection.

## I. The SOIL Procedure

The setoff process begins when various state agencies submit a list of debtors to the defendant, which matches those names with its list of taxpayers who are entitled to personal income tax refunds or homestead (property) tax refunds.[2] Defendant instructs participating agencies to submit only liquidated accounts for setoff, but it does not attempt to verify the validity

---

[1] One of the seven original plaintiffs has not appealed.

[2] ORS 314.415 provides for income tax refunds. ORS 310.640 provides for homestead tax refunds.

or liquidation of the debts. Defendant informs each agency which of the listed debtors are entitled to refunds and obtains final authorization for the setoff when the agency returns a card reporting the current liquidated balance of the debtor's account. Upon receipt of this information, defendant diverts part or all of the tax refund to the agency, which credits the debtor's account in the amount of the setoff. After defendant has withheld the refund and applied it to the appropriate account, a computer-generated notice of that fact is mailed to the debtor. The form of notice varies slightly in the six cases before us, but the gist of each is that the refund has been diverted to another state agency and that the debtor may request a hearing or review of the setoff from that agency within 30 days, after which which the setoff becomes final. The procedures for objecting to the setoff are discussed in more detail below.

## II. The Cases

<u>Lamorie.</u> In 1971, plaintiff Lamorie was charged with an overpayment of $474 by the Public Welfare Division (PWD) and she authorized defendant to divert her tax refund to PWD. Later in 1971 she received notice that she still owed $337 to PWD and she did not challenge that finding. In 1972, PWD sued in district court to collect that sum, but the action was dismissed with prejudice. In 1976, defendant notified her that nearly all of her property tax refund of $390 had been diverted to PWD to be applied to her allegedly delinquent account and that she could submit written objections to the setoff within 30 days. Plaintiff requested hearings from defendant and PWD. The former replied by letter that it was acting as a collection agent for PWD, which had authorized the setoff, and that request for hearing or refund should be addressed to PWD. PWD denied plaintiff's request for a hearing on the ground that plaintiff's 1971 acknowledgment of the overpayment and agreement to repay it rendered the obligation a liquidated claim that could be recovered through setoff even though the

subsequent court action on the alleged debt had been dismissed with prejudice.

Olson. Plaintiff Olson was charged with an overpayment by the Department of Employment in 1963, and did not contest the decision finding an overpayment. In 1965, a judgment for $211 was rendered against him on the overpayment. In 1976, his tax refund was diverted to the Employment Division and he was notified that he could request a review or hearing from the Employment Division within 30 days. He requested a hearing on the ground that the setoff was based on an expired judgment and was therefore invalid. The request for a hearing was denied.

James. In September, 1975, plaintiff James was billed for $1,589 for the cost of her care as a patient at a state hospital. She made a timely request for a hearing to contest the bill, but before the hearing was held, defendant applied her 1975 income tax refund of $97 to her account. The Mental Health Division hearings officer waived the remainder of the bill pursuant to ORS 179.731, but sustained the application of the tax refund. That decision was not appealed.

Brown. In 1973, plaintiff Brown acknowledged receiving an overpayment from PWD and agreed to repay it by monthly reductions in her public assistance grant. Her grant was reduced accordingly for over two years; then a portion of her 1975 tax refund was applied to offset the overpayment. Her requests to PWD and defendant for hearings were denied.

Dotson. Plaintiff Dotson's 1975 tax refund was diverted to the Employment Division to repay an overpayment of $201 with which he had been charged in 1956 and which had been reduced to judgment in 1963. The Employment Division denied his request for a hearing on the ground that his appeal rights with that agency had expired in 1956.

Ramseth. In 1976, plaintiff Ramseth filed claims for property tax refunds for calendar years 1973, 1974 and

1975. All three refunds, totalling $689, were diverted to PWD as repayment for overpayment of public assistance in 1972 and 1973. Plaintiff requested and received a PWD hearing, which resulted in an order which found that plaintiff had received an overpayment but which reduced the assessments by one-third. Plaintiff did not appeal that order.

### III. Statutory Arguments

■ The source of authority for defendant's operation of the SOIL program is the common law remedy of setoff. *See generally, Korlann v. E-Z Pay Plan,* 247 Or 170, 176-77, 428 P2d 172 (1967). That right is available to government as well as private citizens. *United States v. Munsey Trust Co.,* 332 US 234, 239, 67 S Ct 1599, 91 L ed 2022 (1946); *Gratiot v. United States,* 40 US (15 Pet) 336, 370, 10 L Ed 759 (1841). Plaintiffs acknowledge that at common law the state has the right to setoff funds in its possession against debts owed by its citizens, but contend that the setoff right has been modified and restricted by statutes which preclude its use for collection of debts not formally assigned to defendant.

■ The statutory authority for defendant's action was ORS 293.250(3)(a),[3] as it then existed, which provided:

---

[3] ORS 293.250(3) was amended by Or Laws 1977, ch 603, §1. The statute now provides:

"(3)(a) Subject to rules prescribed by the Executive Department for collection of delinquent accounts owing to the respective officers, departments, boards and commissions of state government, the Department of Revenue shall render assistance in such collection and shall charge such officers and agencies separately for the cost of such assistance, provided that charges shall not exceed the proceeds of collection credited to such officer or agency for the same biennium. In providing assistance, the Department of Revenue shall utilize all means available to collect the delinquent accounts including the setoff of any refunds or sums due to the debtor from the Department of Revenue or any other state agency.

"(b) No setoff will be made by the Department of Revenue unless the debt is in a liquidated amount.

"(c) At the time any setoff is made the debtor shall be notified by the Department of Revenue of its intention to apply sums due from a

"Subject to rules prescribed by the Executive Department for collection of accounts owing to the respective officers, departments, boards and commissions of state government, the Department of Revenue shall render assistance in such collection and shall charge such officers and agencies separately for the cost of such assistance, provided that charges shall not exceed the proceeds of collection credited to such officer or agency for the same biennium."

Plaintiffs contend that because ORS 293.240 and 293.250(2)[4] specifically authorize setoff for debts

state agency against the debtor's delinquent account. The notice shall provide that the debtor within 30 days may request a hearing before the claimant agency. No issues at the hearing may be considered that have been litigated previously, or if the debtor after being given due notice of rights of appeal has failed to exercise them timely.

"(d) All moneys received by the Department of Revenue in payment of charges made under paragraph (a) of this subsection shall be paid into the State Treasury and deposited in a miscellaneous receipts account for the Department of Revenue.

"(e) Net proceeds of collections of delinquent accounts shall be credited to the account or fund of the officer or agency to which the debt was originally owing."

[4] ORS 293.240 provides:

"(1) If a state agency has made all reasonable efforts to collect money owed to it and has determined that such money and any interest or penalties therefor are uncollectible, in accordance with criteria for uncollectibility formulated by the agency and approved by the Secretary of State and the Attorney General, *which criteria shall include the right of offset,* the agency may certify to the Secretary of State the amount of the money, interest and penalties, as accurately as can be determined. The Secretary of State may require submission by the agency of all relevant evidence and other information regarding the debt and may examine such records of any other state agency which may be pertinent in determining the uncollectibility of the debt, unless such examination is prohibited by specific provisions of law (except for the secretary's duty to audit the state agency), including but not limited to ORS 314.835 and 657.665.

"(2) If the Secretary of State finds that the debt is uncollectible, in accordance with the criteria for uncollectibility of money due to that state agency, the Secretary of State shall direct the agency to write off the debt on its accounts in a manner approved by the Secretary of State and *assign the debt to the Department of Revenue.*

"(3) This section does not apply to debts owed to a state agency for which a procedure for compromise, release, discharge, waiver, cancellation or other form of settlement thereof for reasons other than

which have been assigned to defendant, the legislature must have intended to withdraw authority for defendant to use setoff to collect debts which, as here, have not been formally assigned. Examination of the statutes reveals no such intent. The gist of ORS 293.240 is that uncollectible debts may be assigned to the Department of Revenue for collection and that debts are not to be deemed uncollectible unless a setoff has been considered. This is not a legislative grant of authority, but a recognition that one method of collecting debts of common law is by setoff. Nothing in ORS 293.240 to 293.250 limits the use of setoff, and we see no basis for inferring such a restriction.

Moreover, assignment cannot have the same meaning between branches of state government that it does between private persons. In a private lawsuit for debt collection, the assignee of the creditor is required to establish the assignment of the debt in order to prove his right to collect a debt owed to another and to assure the debtor that payment to the assignee will extinguish the debt owed to the creditor. So long as a debt is owed to the state, however, it is immaterial to the debtor which agency of the state is collecting it. Hence, the statutory reference to assignments between agencies of the State of Oregon must refer to matters of no concern to the plaintiffs, that is, internal record-keeping, cooperative arrangements and responsibility allocation practices of the state rather than to formal assignments as in the context of private debt collection. Here, plaintiffs are dealing with the State of Oregon as one entity and the existence or manner of

---

uncollectibility is by law made specially applicable to such state agency." (Emphasis supplied.)

ORS 293.250(2) provides:

"The Department of Revenue may render assistance in the collection of any delinquent account owing to any state officer, board, commission, corporation, institution, department or other state organization assigned by the agency to which the delinquent account is owed to the Department of Revenue for collection."

assignment within the organization of state government is immaterial to the debtors' realization of their rights.

■ Plaintiffs also contend that ORS 293.250 makes defendant's authority to assist other agencies in debt collection contingent upon the promulgation of rules. The phrase "[s]ubject to rules prescribed by the Executive Department" authorizes rulemaking, but it does not necessarily mandate rulemaking as a prerequisite to the exercise of the powers granted thereafter. We do not automatically infer such a rulemaking requirement from statutory language such as this. In *Pyle v. Brooks,* 31 Or App 479, 483, 570 P2d 990 (1977), we considered similar language in a statute which in broad terms delegated authority to involuntarily hospitalize persons alleged to be mentally ill. Because of the generality of the delegation and the severe hazard to personal liberty and reputation, we concluded that the legislative intent was to condition the exercise of that authority on the promulgation of rules. There is no similar reason to find such intent in the setoff statutes because the grant of authority is specific, personal liberty is not at stake and regulations could do little to clarify the manner of applying a well-recognized common law right. We conclude that the clause is permissive rather than mandatory.

■ Plaintiffs next contend that their tax refunds are exempt from setoff because defendant has a statutory duty to pay the refunds to them. Former ORS 314.415(1)(a), in its prior form, pertaining to personal income tax, provided:

> "If the amount of the tax refund due as computed is less than the amount theretofore paid, the excess shall be refunded by the department * * *."[5]

The statute creates an entitlement to the refund, but does not restrict the right of setoff. It merely describes a form of debt. Defendant's obligation to pay the debt is no different than any other obligation from debtor to

---

[5] A similar provision in ORS 310.640 applies to homestead or property tax refunds.

creditor. Like other debts, it may be set off against a taxpayer's obligation to the state.

Plaintiffs' final statutory argument is that defendant's operation of the SOIL program violates the confidentiality of their tax returns. Subject to exceptions which are not pertinent here, ORS 314.835 prohibits the disclosure of the "amount of income or any particulars set forth or disclosed in any report or return required under a law imposing a tax upon or measured by net income." Defendant informs the creditor agencies which, if any, of the debtors listed by the agency are entitled to refunds, and in cases where the debt exceeds the refund, the creditor agency is informed of the total amount of the refund when that amount is setoff against the debt.

■ We construe the statutory term "particulars" to mean statements about the amount or sources of a taxpayer's income or other personal information which a taxpayer is required to disclose for his tax to be calculated. The amount of refund to which a taxpayer is entitled is not one of those particulars; rather, it is the result of a calculation which by itself reveals nothing private which the statute is designed to protect from disclosure. To construe the statutory prohibition of disclosure as broadly as plaintiffs suggest would yield unreasonable results, and we must therefore reject such a construction. *James v. Carnation Co.,* 278 Or 65, 72-73, 562 P2d 1192 (1977). For instance, we do not doubt that the state may bring an action to collect unpaid taxes even though the complaint would necessarily disclose the amount due, a fact not specifically enumerated as an exception to confidentiality in ORS 314.820(2). This is the only construction which makes common sense and we infer that the legislature so intended.

## IV. Constitutional Arguments

### A. Equal Protection

■ Plaintiffs' equal protection assertion rests on *James v. Strange,* 407 US 128, 92 S Ct 2027, 32 L Ed 2d 600

(1972). There, the United States Supreme Court invalidated a Kansas recoupment statute authorizing the state to recover counsel fees expended for the benefit of indigent criminal defendants. The court held that the statute violated equal protection because it did not provide the same exceptions that were available to other judgment debtors in actions brought by private creditors. *James* stands for the proposition that the state cannot grant itself greater rights of recovery against its debtors than a private creditor has in similar circumstances. Plaintiffs argue that defendant's advance collection of estimated taxes by compulsion of law is a right not available to private creditors and, hence, the SOIL procedure violates the *James* principle. To the contrary, defendant exercises the same right of setoff that is available to private creditors—the right to apply funds of the debtor which are lawfully in the creditor's possession toward the extinguishment of a liquidated debt owed to the creditor. *See, United States v. Munsey Trust Co.,* 332 US at 239; *Gratiot v. United States,* 40 US (15 Pet) at 370. Defendant's possession of plaintiffs' tax refunds is legitimate and is not a subterfuge for purposes of debt collection. In short, nothing about defendant's exercise of the right of setoff deprives plaintiffs of any rights, defenses or exemptions that would be available to them in resisting setoff by private creditors.

## B. Due Process

Plaintiffs contend that defendant denied them procedural due process[6] by withholding their tax refunds without first providing the opportunity for an evidentiary hearing. So broadly stated, plaintiffs' argument is misleading. Each plaintiff had an opportunity to be heard before the appropriate creditor agency as to the validity and amount of the debt in question. Each

---

[6]The Fourteenth Amendment to the United States Constitution provides in part:

"* * * nor shall any State deprive any person of life, liberty, or property, without due process of law * * *."

[ 407 ]

plaintiff took advantage of that opportunity or waived it. In all cases, the debts to the creditor agencies became liquidated by order following a hearing or by expiration of the time to request a hearing. Because defendant instructs creditor agencies to submit only liquidated debts for collection under the SOIL procedure, the primary issue that plaintiffs might raise at a pre-setoff hearing—liquidation of the debt—has already been administratively resolved adversely to plaintiffs by procedures which satisfy due process requirements.[7] The only issues on which plaintiffs have not had an opportunity to be heard are those arising from mistake or events that occurred after the debt became liquidated by completed administrative action. Thus, the narrow question for decision in this case is what procedures are constitutionally required before defendant can set off plaintiffs' tax refunds against liquidated debts whose underlying validity is no longer subject to challenge.

■ Due process is flexible and requires such procedural protections as the particular situation demands. *Morrissey v. Brewer,* 408 US 471, 481, 92 S Ct 2593, 33 L Ed 2d 484 (1972). *Goldberg v. Kelly,* 397 US 254, 266, 90 S Ct 1011, 25 L Ed 2d 287 (1970). The scope and nature of the required opportunity to be heard will be determined in large part by the nature of issues likely to arise, the risk of agency error, and the likelihood of reducing that risk by additional procedural safeguards that do not impose excessive or unnecessary burdens on the agency. *Matthews v. Eldridge,* 434 US 319, 335, 96 S Ct 893, 47 L Ed 2d 18 (1976); *Floyd v. Motor Vehicles Div.,* 27 Or App 41, 44, 554 P2d 1024 *rev den* (1976).

■ In this case, the due process question is what procedures are necessary to protect against the risk of

---

[7] Plaintiffs' prior opportunity to challenge the validity or amount of their debts to the creditor agencies makes this case distinguishable from *Goldberg v. Kelly,* 397 US 254, 90 S Ct 1011, 25 L Ed 2d 287 (1970), and *Sniadach v. Family Finance Corp.,* 397 US 331, 89 S Ct 1820, 23 L Ed 2d 349 (1969). *See, State ex rel Cox v. Cox,* 31 Or App 473, 570 P2d 988 (1977).

error arising from post-liquidation institutional mistake or events. A taxpayer whose refund is to be withheld by defendant must be afforded the opportunity to inform defendant, for example: that it has mistaken him for another taxpayer; that it has miscalculated the balance of his debt; that he has paid or compromised the debt; that the debt has been the subject of an unrelated adjudication; or that his refund is not a proper subject for setoff for some other reason. An evidentiary hearing is not necessarily required because such issues can normally be resolved by documentation. It is sufficient if defendant informs the taxpayer that his tax refund is being applied to a debt which the notice identifies and that he may submit any objections in writing to defendant or to the creditor agency. If the taxpayer's claim of error raises an unresolved factual issue, then an evidentiary hearing is appropriate. These procedures comport with due process because they are sufficient to protect against probable types of error but do not impose an unreasonable burden on defendant's administration of the SOIL program.[8]

Although the form of the notices sent to the six plaintiffs varies somewhat, plaintiff Brown's case is representative. The notice to her of setoff includes the following statement of her opportunity to be heard: "If you do not agree with this notice, please submit your objections in writing within 30 days from the date of this notice, stating why it is in error." Through her attorney, plaintiff Brown made written requests for a hearing from defendant and PWD. She contended that the setoff was improper because it violated her pre-existing repayment agreement with PWD. Defendant responded by letter referring plaintiff to PWD. PWD also responded by letter explaining that the amount of Brown's tax refund constituted a cash reserve in excess of the amount that welfare regulations permit a welfare recipient to retain when there is an unrecovered overpayment. The letter concludes, "Under the

---

[8] *Cf.* ORS 293.250(3)(c), as amended in 1977, set out in note 3 above.

circumstances, there is no issue that warrants * * * a hearing on this matter."

This procedure satisfies the requirements of due process. Plaintiff had an opportunity to contest the setoff and her objections to it were considered by the creditor agency. If the agency's rejection of her contentions was erroneous, judicial review pursuant to ORS 183.484 is available to plaintiff for the correction of the error. Because her contentions raised purely legal issues and no factual issues, a full evidentiary hearing before PWD would not have provided greater safeguards than the written submission. *Cf., Sun Oil Company v. Federal Power Commission,* 256 F2d 233, 239-40 (5th Cir 1958).

Several plaintiffs received notices which informed them of their right to hearing or agency review but did not require a written statement of reasons for requesting a hearing. In all but one case, however, plaintiffs' requests for hearing or review included a statement of the grounds for plaintiffs' claim of erroneous setoff. Since the creditor agencies considered plaintiffs' contentions in those cases and the contentions were purely legal, the procedures actually followed were the same as for plaintiff Brown, and they comported with due process.

■ Plaintiff Dotson's setoff notice included this statement of his opportunity to be heard:

"If you desire a review about the basis of the claim or balance due your account, contact [the Employment Division]. Hearing requests must be made in 30 days or the offset is final."

The notice did not require a statement of reasons or grounds for objection. Dotson requested a hearing but did not state the basis of his objection to the setoff. By letter, the Employment Division denied his request with an explanation of the status of his account and the statement that his appeal rights with the agency expired in 1956.

This procedure does not meet minimum due process requirements. From the notice, Dotson reasonably could have concluded that he was entitled to a hearing on request without having to state the basis of his objections to the setoff. He asked for a hearing, but his request was denied. He was led to believe that he could present his objection at the hearing; because there was no hearing, he had no real opportunity to bring a mistake or fact other than liquidation since 1956 to the attention of defendant or the Employment Division. This failure to provide an opportunity to be heard requires reversal of the trial court's judgment as to plaintiff Dotson. As to the five other plaintiffs, there was no constitutional defect in the setoff procedures.

## V. The Merits

Plaintiffs have challenged the SOIL procedures as constitutionally insufficient to allow consideration of their claims that the setoff was erroneous. We have held that the procedures were adequate except as to plaintiff Dotson. We have not decided whether defendant's or the creditor agencies' resolutions of plaintiffs' substantive claims were correct on the merits. We do not reach the merits of those claims, however, because plaintiffs' complaint does not seek correction of substantive error by defendant or the creditor agencies. Although judicial review of agency orders in cases like these is available under ORS 183.484, plaintiffs chose to pursue a broad constitutional attack on the SOIL procedures instead of challenging the correctness of the agencies' decisions on the merits. Therefore, we cannot and do not reach the substance of the contentions which plaintiffs presented to the creditor agencies by their written statements of objections.

## VI. Class Action

Pursuant to ORS 13.220, plaintiffs seek to represent all persons whose tax refunds for the 1975 calendar year were withheld under the SOIL program. The trial court denied plaintiffs' motion for certification as a class action because there were questions of

fact not common to all members of the proposed class, ORS 13.220(1)(b), and defendant might therefore have had various justifications for withholding different persons' tax refunds. Our resolution of the due process questions has required examination of the notices and procedures in each case. We cannot in this case resolve the constitutional questions in other cases where we have no record of the actual notice and procedures used in withholding tax refunds. There was no error in denying the motion for certification as a class action.

Affirmed in part; reversed in part and remanded for entry of an order consistent with this opinion regarding plaintiff Dotson.