IN THE OREGON TAX COURT
REGULAR DIVISION
Personal Income Tax

| | | |
|---|---|---|
| DONALD J. HEFFLINGER and MICHELLE GRIFFITHS, | ) ) ) | **TC 5466** |
| Plaintiffs, | ) | |
| v. | ) ) | |
| DEPARTMENT OF REVENUE, State of Oregon, | ) ) ) | |
| Defendant. | ) ) | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

## I.  INTRODUCTION

Plaintiffs' complaint seeks recovery of two personal income tax refunds that Defendant offset against debt allegedly owed to the state.  Defendant has moved to dismiss Plaintiffs' complaint for lack of subject matter jurisdiction.  *See* Tax Court Rule (TCR) 21 A(1).  The court will grant Defendant's motion because no statute expressly resolves whether this court has jurisdiction in offset cases, and because the authority to conduct offsets consists of common-law creditor rights, regulated by statute; that authority is not part of the "tax laws of this state."

A.    *Facts*

The key facts are procedural and undisputed.  Plaintiffs overpaid their personal income tax for 2021 and 2022, and they claimed refunds when they filed their returns ($637.59 for 2021 and $2,548.00 for 2022).  (Ptfs' Compl, Ex B at 4, 7.)  Defendant does not dispute the amount of refunds it owed to Plaintiffs.  However, in lieu of issuing refund checks or direct deposits to

Plaintiffs, Defendant applied ORS 293.250,[1] reducing the refunds to zero in order to offset debts that Defendant alleges Plaintiffs owed to the Oregon Department of Consumer and Business Services (DCBS). [2] Defendant issued Notices of Refund Offset (Notices) for each year.

ORS 293.250(5)(d) requires Defendant to notify the debtor, "[a]t the time any setoff is made," that the debtor may, "within 30 days and in a manner prescribed by the department, contest the setoff and request a hearing before the department." The record before the court includes only the first page of each Notice, and that page does not include any notification to Plaintiffs regarding their appeal rights before Defendant or any mention of judicial review. (Ptfs' Compl, Ex B at 4, 7.)

Plaintiffs did not request a hearing before Defendant in response to the Notices. (*See* Def's Decl of Miller at 2, ¶ 8 ("The department received no request for a contested case hearing under ORS 293.250(5) within the thirty-day period following the issuance of the offset notices described in paragraphs six and seven of this declaration.").) Plaintiffs instead appealed to the Magistrate Division, which dismissed their appeal for lack of subject matter jurisdiction.

On appeal in this division, Plaintiffs allege that they owed nothing to DCBS, and they seek a full refund of all amounts offset.[3] (*See* Ptfs' Compl at 2.) Among other grounds, they allege that any debt to DCBS had been discharged in bankruptcy before Defendant offset

---

[1] References to the Oregon Revised Statutes (ORS) are to the 2021 edition unless otherwise indicated. The court reprints relevant portions of ORS 293.250 in the appendix to this order.

[2] Defendant commonly refers to debts that it collects on behalf of other state agencies as "other agency debt," and the court occasionally will use this descriptive label. (*E.g.*, Def's Mot Dismiss at 5.)

[3] Although Plaintiffs, who are not represented by counsel, refer to Defendant's actions as "garnishments," their complaint and attachments make clear that Plaintiffs appeal solely from the offsets described in the Notices. *See Black's Law Dictionary* 689 (7th ed 1999) ("garnishment" generally means "to attach (property held by a third party) in order to satisfy a debt"); *cf. Brown v. Lobdell*, 36 Or App 397, 399, 585 P2d 4 (1978) ("'setoff' [or offset] is used in its ordinary sense to mean the right which exists between two parties, each of whom is indebted to the other to apply the debts to one another by mutual reduction so that everything but the difference between the two is extinguished."). The court refers variously to "setoff" and "offset," as both terms are used in ORS chapter 293.

Plaintiffs' tax refunds.[4]  To the extent that these allegations are relevant, the court accepts them as true in considering Defendant's motion.  *See McLaughlin v. Wilson*, 365 Or 535, 537, 449 P3d 492 (2019).

B.      Sanok v. Grimes *Framework to Determine Jurisdiction*

In its motion, Defendant refers to ORS 305.410, arguing that the court lacks subject matter jurisdiction because Plaintiffs' complaint "do[es] not raise any question of law or fact arising under the tax laws of this state."  (Def's Mot Dismiss at 2.)

The Oregon Supreme Court has described the statutes governing this court's subject matter jurisdiction as not a "picture of clarity."  *Jarvill v. City of Eugene*, 289 Or 157, 162, 613 P2d 1 (1980).  To resolve jurisdictional issues, the Court has provided a multi-step analytical framework.  *See Sanok v. Grimes*, 294 Or 684, 697, 662 P2d 693 (1983).  Regarding collection matters specifically, this court has cautioned against generalizations such as a broad assertion that this court's jurisdiction does not extend to collection matters.  *See Perkins v. Dept. of Rev.*, 22 OTR 370, 381 (2017) (granting Defendant's motion to dismiss).  To undertake the specific statutory analysis necessary in this case, the court held oral argument and required supplemental briefing, which the parties completed on March 17, 2025.

The *Sanok* framework requires this court to undertake the following steps:

1.  Identify the "subject matter of each claim."  *Sanok*, 294 Or at 689 n 22.
2.  Determine whether any statute "expressly" or "positively" (*id.* at 692)

---

[4] Plaintiffs allege that Defendant's offsets were improper in one or more of the following ways:

- A consent order memorializing Plaintiffs' alleged debt to DCBS was "fraudulently documented * * * and relayed" to the department.  (Ptfs' Compl at 2.)
- The refund for 2021 is exempt from offset under ORS 18.348, 656.234, and 344.580.  (*See id*.)
- Any underlying debt to DCBS was discharged in bankruptcy.  (*See* Ptfs' Ltr, Aug 1, 2024 ("We filed for Chapter 7 Bankruptcy Case No. 16-33355-tmb on August 31, 2016, and was discharged on January 12, 2017, with U.S. Bankruptcy Judge Trish M. Brown within the U.S. Bankruptcy Court District of Oregon.").)  Plaintiffs further state that "[The] list of creditors [in the bankruptcy proceeding includes] 101297846 (Oregon Dept. of Financial Regulation) c/o Tippi Pearce, 350 Winter St NE, Suite 410 Salem, OR."  (*Id*.)

a. Precludes jurisdiction in this court (*see, e.g.,* ORS 305.410(1)(a)-(o) (listing provisions that "are not tax laws of this state"));

b. Confers jurisdiction in this court (*see, e.g.,* ORS 320.330 (providing for "appeals to the Oregon Tax Court")); or

c. Confers jurisdiction in a different court (*see Sanok*, 294 Or at 692 n 6 ("Where jurisdiction over a case is positively located in another court, then that procedural fact implies that the case is not one 'arising under the tax laws' and is not within the jurisdiction of the tax courts.").

If the legislature has expressly defined jurisdiction in any of these ways, no further analysis is needed.

3. If no statute expressly precludes or confers jurisdiction, determine whether the matter arises under the "tax laws of this state," a term that the legislature has defined only by the list of exclusions in ORS 305.410(1). *See id.* at 692. The Supreme Court's framework aids in this task by providing:

a. "Questions which must be resolved in order to decide taxability or the amount of tax do arise under the tax laws." *Sanok*, 294 Or at 697.

b. A "claim is not one 'arising under the tax laws' unless it has some bearing on tax liability." *Id.* at 701.

To summarize one possible scenario under this framework: If, with respect to a particular claim, the legislature has not expressly precluded or conferred jurisdiction in any court, and the claim does not arise under the tax laws of this state, this court lacks jurisdiction.

C.    *Summary of Conclusions*

Here, as to step 1, there is no dispute: Plaintiffs bring a single claim, that their personal income tax refunds for 2021 and 2022 must be paid out to them instead of to DCBS.[5]

This case primarily involves five issues under step 2. First, Defendant argues that the requirement of a "hearing before the department" under ORS 293.250(5)(d) is an express conferral of jurisdiction on Defendant. The court rejects this argument because

---

[5] Although Plaintiffs make various allegations regarding the conduct of DCBS, the court views these as defenses to offset rather than as claims. At oral argument Plaintiff Hefflinger clarified that Plaintiffs seek only to receive the cash value of their tax refunds. (Statement of Donald J. Hefflinger, Oral Argument, Sept 9, 2024, 10:03.)

the issue is the scope of this court's jurisdiction to exercise judicial review, not whether the legislature has tasked Defendant or any other agency with administrative review. Second and relatedly, Defendant implies that the legislature intended that there be no judicial review of setoff hearings, but Defendant does not identify a statute that says so expressly. Third, Defendant posits two potential paths to judicial review under the Administrative Procedures Act (APA), even though Defendant is exempt from key APA provisions governing hearing procedures: Defendant could voluntarily enter into a contract with the Office of Administrative Hearings to hold a contested case hearing, as provided in ORS 183.625(4), or it could simply voluntarily follow the APA hearing procedures. As to the former, the court is not persuaded that a general grant of authority to multiple agencies to pursue an entirely elective process requiring a contract with another agency rises to the level of an "express" or "positive" location of jurisdiction upon judicial review under the APA. As to the latter, based on case law, the Court of Appeals would likely reject jurisdiction. Fourth, Defendant argues that the residual jurisdiction of the circuit courts satisfies the requirement that the legislature have "expressly" or "positively" located jurisdiction there. This court finds this argument contrary to the Supreme Court's reasoning in *Sanok*. The fifth issue, which the court raises *sua sponte*, is whether the more expansive phrase "*revenue and* tax laws of this state" found in ORS 305.275(1)(a)(A) (emphasis added) expressly broadens this court's jurisdiction to include this "other agency debt" offset case even if ORS 293.250 is not a "tax law[ ] of this state" under ORS 305.410(1). Based on a *Gaines* analysis, the court concludes that ORS 305.275(1) does not amount to an express conferral of jurisdiction as to this issue. *State v. Gaines*, 346 Or 160, 172, 206 P3d 1042, 1051 (2009).

Applying step 3 of the framework, the court concludes that Plaintiffs' claim does not require the court to "decide taxability or the amount of tax," nor does it have any "bearing on tax liability."

For these reasons, the court concludes that Plaintiffs' claim falls outside the court's jurisdiction, and the court will grant Defendant's motion.

## II.  ISSUE

Are Plaintiffs' challenges to Defendant's offsets against personal income tax refunds within the jurisdiction of this court?

## III.    ANALYSIS

A.    *Express Exclusion or Conferral of Jurisdiction (Sanok Step 2)*

Defendant argues that its motion requires the court to focus on the narrow question of the reach of its own jurisdiction, and that, if the court decides that it lacks jurisdiction, it is not empowered to determine where else jurisdiction lies.  (*See* Def's Resp Court Questions at 6 ("[T]his court lacks jurisdiction to decide which of those other avenues of appeal is the correct one. This court may decide only its own jurisdiction.").)  The court agrees, but in answering that narrow question the court nonetheless must apply the *Sanok* framework, including examining whether any statute "expressly" or "positively" places jurisdiction in "another court" or otherwise expressly precludes jurisdiction in this court.  294 Or at 692-93.  Because the court ultimately concludes that it lacks jurisdiction, its analysis under step 2 of *Sanok* will stop short of deciding whether any other court has jurisdiction.

    1.  Does the right to Defendant's own hearing under ORS 293.250(5)(d) expressly preclude jurisdiction in this court?

Defendant first argues that ORS 293.250(5)(d) expressly confers jurisdiction for the instant appeal *on the Defendant*, implicitly precluding jurisdiction in this court.  (*See*

Def's Resp Court Questions at 1 ("In sum, there is no need for the court to look any further than ORS 293.250(5)[(d)], which explicitly directs all challenges to an offset by the department to be filed as a request for a hearing before the department within 30 days of the notice of offset.") (footnote omitted).)[6]  Although Defendant is correct that ORS 293.250(5)(d) expressly provides an opportunity for an aggrieved debtor to request a hearing before Defendant, Defendant's argument misses the point.  The fact that the legislature has expressly made an *administrative remedy* available to Plaintiffs merely shifts the question to whether *judicial review* of Defendant's action or inaction in administering that remedy is available, and if so, in which court.

> 2.      Does any statute expressly prohibit judicial review?

Defendant implies that the legislature simply may have provided no judicial review of an offset that Defendant undertakes after offering a hearing under ORS 293.250(5)(d).  (*See* Def's Resp Court Questions at 15 ("*if* there is a right to further appeal beyond the hearing before the department") (emphasis added); *id.* at 16 ("due process may not require more" than the opportunity for Defendant's own hearing).)  Defendant points to no statute expressly prohibiting judicial review, and the court has found none.  Thus, this court concludes that the legislature has not said "expressly" or "positively" that no court has jurisdiction, as contemplated under *Sanok*.

> 3.      APA judicial review after voluntary OAH hearing, or APA judicial review after voluntary "contested case" or "other than a contested case" hearing

Defendant argues that judicial review in the Court of Appeals or a circuit court may be allowed, depending on whether Defendant chooses to apply the APA procedures

---

[6] Defendant does not argue that any of the express exclusions in ORS 305.410(1)(a) to (o) precludes jurisdiction in this court.

for a contested case. (*See id.* at 15-16.) Defendant acknowledges that it is not required to apply the contested case provisions in ORS 183.482, because ORS 183.315(1) excepts Defendant from ORS 183.480, which declares that a person adversely affected by an agency order or proceeding is entitled to judicial review under ORS 183.482 or another specified provision of the APA. However, Defendant argues that it could choose to contract with the Office of Administrative Hearings (OAH) to conduct a hearing under ORS 183.625(4), which provides:

> "An agency that is not required to use administrative law judges assigned from the office may contract with the chief administrative law judge for the assignment of an administrative law judge from the office for the purpose of conducting one or more contested cases on behalf of the agency."

(*See* Def's Ltr to Court (Sept 9, 2024).) The court assumes, without deciding, that the result of any hearing thus contracted for under ORS 183.625(4) would be reviewable by the Court of Appeals under ORS 183.482, even though the hearing would be conducted on "behalf" of Defendant, an entity exempt from the contested case requirements.

While this path would appear to provide for judicial review, if Defendant were to choose to take it, the record gives no indication that Defendant offered it to Plaintiffs--the excerpts of the Notices to Plaintiffs do not include any pages that describe appeal rights or processes--or that Defendant has ever offered it to anyone. The court thus has no basis to assume that the path to Court of Appeals review that starts with a hearing under contract with OAH is anything but hypothetical. The court concludes that this interpretation of ORS 293.250, together with ORS 183.625(4), do not constitute "express" or "positive" location of jurisdiction in any court because Defendant need not invoke the provisions. *Cf. Sanok*, 294 Or at 692 n 6 citing *Hayden Island v. Dept. of Env. Qual.*, 4 OTR 69, 71 (1970) (Tax Court lacks jurisdiction where statute allows appeal

from agency order to circuit court "in accordance with the provision of ORS chapter 183"), *aff'd* 258 Or 597, 484 P2d 1106 (1971); *Multnomah County v. Talbot*, 56 Or App 235, 239-40, 641 P2d 617 (1982) (referring to potential judicial review "under the APA"), *aff'd* 294 Or 478, 657 P2d 684 (1983) (adopting Court of Appeals opinion)).

Defendant seems to proffer a variation on its third argument: that Defendant, although not required to do so, would choose to conduct either a contested case hearing or an "other than a contested case" proceeding pursuant to the APA, without assistance from OAH, which could be reviewed by the Court of Appeals or a circuit court, respectively. (*See* Def's Resp Court Questions at 16 (although Defendant "does not have to follow the Administrative Procedures Act contested case processes," "DOR is not explicitly exempted from either ORS 183.482 (governing appeals from contested case orders) or 183.484 (governing appeals from orders in other than a contested case")).) To the extent Defendant posits such a path, this court finds it unlikely that the Court of Appeals would have jurisdiction, based on *Portland Mailing Services, Inc. v. SAIF*, 84 Or App 558, 561, 734 P2d 898 (1987). There, the petitioner employer sought review of a determination by the State Accident Insurance Fund (SAIF), which is excepted from the same APA provisions as Defendant, pursuant to ORS 183.315(1)). The court agreed with SAIF that ORS 183.482, standing alone, does not confer jurisdiction to review an agency order in a contested case; rather, "ORS 183.482 merely governs the scope of our review once jurisdiction is acquired under ORS 183.480. * * * Because SAIF is exempt from ORS 183.480, authority for judicial review of its determinations is not provided for by the APA." *Id.* The same reasoning would likely preclude jurisdiction to review acts of Defendant in voluntarily following procedures set forth in the APA.

The court observes that judicial review of Defendant's offset actions under the APA was allowed, at least for a subset of cases, before a 2017 amendment to ORS 293.250. *See* Or Laws 2017, ch 746, § 16. Before the 2017 amendment, a debtor could seek judicial review of Defendant's offset action by first seeking an administrative hearing before the "claimant state agency or county," rather than a hearing before Defendant. *Former* ORS 293.250(3)(e) (2015). To the extent that the creditor/claimant was a state agency not covered by the exceptions applicable to Defendant and SAIF, judicial review under the APA was generally available. *See Brown v. Lobdell*, 36 Or App 397, 410, 585 P2d 4 (1978) (construing *former* ORS 293.250 as enacted by Or Laws 1971, ch 604, § 2 (1971)) ("If the agency's rejection of [the plaintiff's] contentions was erroneous, judicial review pursuant to ORS 183.484 is available to plaintiff for the correction of the error.").

Given the absence of any express statutory prohibition of judicial review, and the absence since 2017 of express, mandatory access to judicial review under the APA, ORS 293.250(5)(d) falls short of expressly conferring jurisdiction for review of Defendant's offset action in the Court of Appeals or in a circuit court.

4. Residual Jurisdiction in Circuit Courts

Defendant also argues that judicial review of Defendant's offset action may be proper in a circuit court, not under the APA but because the Oregon Constitution confers "residual" jurisdiction in the circuit courts. (*See* Def's Resp Court Questions at 16 ("where jurisdiction is not directed otherwise the circuit court may have jurisdiction as the court of residual jurisdiction.")); *State v. Terry*, 333 Or 163, 186, 37 P3d 157 (2001) ("Under the Oregon Constitution, circuit courts have subject matter jurisdiction over all actions unless a statute or

rule of law divests them of jurisdiction.") (citing Or Const, Art VII (Original), § 9). This is true as far as it goes, but it does not answer the question. In establishing the framework to determine this court's jurisdiction, the Supreme Court clearly did not intend the "residual jurisdiction" of the circuit courts to suffice as an "express[ ]" or "positive[ ]" statutory assignment of jurisdiction. *Sanok*, 294 Or at 693 n 6 ("residual jurisdiction" in circuit courts arises "[w]here *no statute* places jurisdiction in a court of limited subject-matter jurisdiction such as the tax court.") (emphasis added).[7]

    5.  ORS 305.275(1)

Having rejected Defendant's arguments, the court next considers, *sua sponte*, whether ORS 305.275(1) expressly confers jurisdiction in this court. ORS 305.275(1) (emphasis added) provides:

> "(1) Any person may appeal under this subsection to the magistrate division of the Oregon Tax Court as provided in ORS 305.280 and 305.560, if all of the following criteria are met:
>
> "(a) The person must be aggrieved by and affected by an act, omission, order or determination of:
>
> "(A) The Department of Revenue *in its administration of the revenue and tax laws* of this state;
>
> "(B) A county board of property tax appeals other than an order of the board;
>
> "(C) A county assessor or other county official, including but not limited to the denial of a claim for exemption, the denial of special assessment under a special assessment statute, or the de4nial of a claim for cancellation of assessment; or
>
> "(D) A tax collector.

---

[7] The analysis by the Court of Appeals in *Horner's Mkt. v. Tri-Cty. Met. Transp. Dist.*, 2 Or App 288, 293, 467 P2d 671, *aff'd* 256 Or 124, 471 P2d 798 (1970), as summarized with approval in a parenthetical reference in *Sanok*, illustrates that the correct order of operations is to determine first whether the Tax Court has jurisdiction, and if not, to proceed to the next step of considering whether a circuit court has residual jurisdiction. *See Sanok*, 294 Or at 693 n 6 ("existence of transportation district not within jurisdiction of tax court, *hence* within jurisdiction of circuit court") (emphasis added).

"(b) The act, omission, order or determination must affect the property of the person making the appeal or property for which the person making the appeal holds an interest that obligates the person to pay taxes imposed on the property. As used in this paragraph, an interest that obligates the person to pay taxes includes a contract, lease or other intervening instrumentality.

"(c) There is no other statutory right of appeal for the grievance."

The issue is whether ORS 305.275(1), by referring to acts, omissions, orders or determinations of Defendant in its administration of the "revenue and tax laws" of this statute expressly expands this court's jurisdiction beyond the scope of questions arising under the "tax laws" of this state under ORS 305.410(1), specifically to include offsets under ORS 293.250. Defendant contends that an offset is not an "act taken in its administration of the revenue and tax laws of the state. It is an act taken under the agency's authority as the collector of debts owed to the State of Oregon in its role as a creditor." (Def's Resp Court Questions at 8.) [8]

The court applies the statutory interpretation framework in *Gaines*, examining the text, context, and relevant legislative history. 346 Or 160 at 172. The phrase "revenue and tax laws of this state" is not statutorily defined. It originates in a 1977 law that

_____

[8] Defendant also raises a second objection, arguing that the function of ORS 305.275(1) is limited to conferring standing to sue, and that the statute therefore cannot increase the scope of the court's jurisdiction beyond the court's jurisdiction under ORS 305.410. (*See* Def's Resp Court Questions at 17 ("Where no specific provision provides for tax court jurisdiction, however, ORS 305.275(1) provides an avenue for appeal to the tax court, as long as the matter is also within the court's jurisdiction under ORS 305.410.").) The court rejects this argument because the legislature has not limited itself to declaring the court's jurisdiction in any particular manner. The list in ORS 305.410(1)(a) to (o) of provisions that are *not* tax laws of this state is complemented by a host of statutes that provide for appeals to this court. *See, e.g.,* ORS 320.330 (statutory provisions governing "appeals to the Oregon Tax Court" apply to state lodging tax); ORS 320.475 (same). The court in *Sanok* clearly viewed a provision now codified as ORS 305.275(1)(a)(C) as establishing the court's jurisdiction to adjudicate objections to the denial of "special assessment" of forest and farm land for property tax purposes:

"[Plaintiff's] third prayer seeks to establish defendants' legal responsibility for determining the adequacy of plaintiff's forest practices, which again arises under the tax court's jurisdiction to decide forest land status. ORS 305.275(1)(c)"

*Sanok*, 294 Or at 699.

created or amended numerous procedural statutes, including ORS 305.275. *See* Or Laws 1977, ch 870, § 5 (SB 833). The word "revenue" distinguishes the phrase from the phrase "tax laws of this state" as used in the court's main jurisdiction statute, ORS 305.410; therefore, court turns to the plain meaning of "revenue" as of 1977:

> "1c: the annual or periodical yield of *taxes, excises, customs, duties, and other sources of income* that a nation, state, or municipality collects and receives into the treasury for public use: public income of whatever kind[.]"

*Webster's Third New Int'l Dictionary* 1942 (unabridged ed 1976). The definition describes "taxes" as one subset of revenue, alongside "other sources of income" that a state receives for public use. Standing alone, the plain meaning thus supports a view that the legislature intended SB 833 to broaden the court's jurisdiction, potentially to include Defendant's acts and omissions that bring any source of income to the state, rather than only acts and omissions involving the "tax laws of this state" as defined under ORS 305.410.

Context and relevant legislative history, however, undermine that view. Context includes prior versions of the statute. *See e.g. State v. Ziska*, 355 Or 799, 806, 334 P3d 964, (2014) ("Analysis of the context of a statute may include prior versions of the statute."). The version of ORS 305.275(1) first enacted in 1977 did not mention the court, but instead prescribed requirements for administrative appeals before *Defendant*.[9]

---

[9] *Former* ORS 305.275(1) (1977) (emphasis added) provided:

"(1) Any person aggrieved. by an act or omission of:
"(a) The Department of Revenue in its administration of the revenue and tax laws of this state; or
"(b) A county board of equalization other than an order of the board; or
"(c) A county assessor, including but not limited to the denial of a claim for exemption, the denial of special assessment under ORS 308.370 or other special assessment statute, or the denial of a claim for cancellation of assessment; or
"(d) A tax collector,
"which affects his property and for which there is no other statutory right of appeal, *may appeal to the Director of the Department of Revenue* in the manner provided by this section."

This is not surprising, because at that time, nearly 20 years before creation of the

Magistrate Division, Defendant employed hearing officers to review petitions, and to

issue orders from which appeals could be taken to the Regular Division of this court. *See*

*former* ORS 305.425(2) (1975) (proceedings in this court for appeals or review of

Defendant orders); *former* ORS 305.115(1) (1975) providing for hearing officers).[10] It

was only in 1995 that the legislature replaced Defendant's administrative appeal process

by creating the Magistrate Division.[11] This context weighs heavily against reading the

reference to "revenue" laws in ORS 305.275(1) as a modification of this court's

jurisdiction.

      Context also includes other provisions of the same act. *See, e.g.*, *Unger v. Rosenblum*,

362 Or 210, 221, 407 P3d 817 (2017) ("[W]e consider all relevant statutes together, so that they

may be interpreted as a coherent, workable whole.") Section 1 of the 1977 act inserted the same

reference to the "revenue and tax laws" into ORS 305.015. That section, which has not been

amended since 1977, declares:

> "It is the intent of the Legislative Assembly to place in the Department of
> Revenue and its director the administration of the revenue and tax laws of this
> state, except as specifically otherwise provided in such laws."

The 1977 reference to the "revenue and tax laws of this state" replaced a lengthy

enumeration of ORS sections and chapters, including chapters 118 and 119 (containing

---

[10] Indeed, the 1977 act codified a requirement to exhaust such administrative remedies before proceeding to this court. *See former* ORS 305.275(4) (1977) ("Except as provided in ORS 118.350, 118.370 and 305.410, no person shall appeal to the Oregon Tax Court or other court on any matter arising under the revenue and tax laws administered by the department unless he first exhausts the administrative remedies provided him before the department and the director.").

[11] In the 1995 bill creating the Magistrate Division, ORS 305.275 was amended to apply ORS 305.275 to appeals in the Tax Court rather than appeals to Defendant. *See* Or Laws 1995, ch 650, § 7. In 1999, ORS 305.275 was again amended, as part of a set of apparent technical corrections, to clarify that appeals must first be filed with the Magistrate Division. *See* Or Laws 1999, ch 340, § 2. The court has found nothing in either amendment indicating an intention to broaden the court's subject matter jurisdiction.

the former inheritance and gift tax provisions) and the entirety or portions of chapters 305 to 323.[12]  This amendment suggests that the legislature may have intended the phrase simply as a shorthand reference to all of the statutes that were subject to Defendant's administration at the time.

The available legislative history of those 1977 amendments to ORS 305.015 supports this interpretation.[13]  The court has found no mention of "tax laws of this state" under ORS 305.410 in the discussion of the amendments to ORS 305.015 (or ORS 305.275).  SB 833 appears to have been primarily the work of Department of Justice attorney Ted De Looze, chief counsel for Defendant, who explained his reasoning and intentions when presenting a section-by-section overview to the Senate Committee on Revenue and School Finance.  In discussing the pre-amendment list of statutes in ORS 305.015, De Looze stated:  "These lists in the statutes are deadly because nobody keeps them up to date. I've found many references in this bill where there's a reference to a section that was repealed years ago."  Tape Recording, Senate Committee on Revenue and School Finance, SB 833, Apr 6, 1977, Tape 20, Side 2, 1:01:05 (statement of Ted De Looze).  To the extent that the legislature can be viewed as sharing De Looze's understanding, this testimony suggests an intention to adopt a phrase that would capture

---

[12] *Former* ORS 305.015 (1975) provided:

"It is the intent of chapter 520, Oregon Laws 1969, to place in the hands of a director of a Department of Revenue the administration of ORS chapters 118, 119, 305, 306, ORS 307. 010 to 307. 450, 307. 810 to 307. 990, and ORS chapters 308 to 310, ORS 311. 105 to 311. 160, 311. 205, 311. 207 to 311. 806, 311. 812 to 311. 821 and 311. 990 and ORS chapters 312 to 318 and 320 to 323, and all the powers and duties of the commissioners of the State Tax Commission."

[13]  Unfortunately, some legislative audio previously held by the Oregon State Archives relevant to SB 833 (1977) appears to no longer exist in that collection.  Missing portions include the beginning and a significant initial share of De Looze's section-by-section overview of the bill for Senate committee members.   Tape 20, Side 1 (April 4, 1977, Senate Committee on Revenue and School Finance) and Tape 25, Side 1 (May 16, 1977, House Committee on Revenue and School Finance).

the existing breadth of the laws Defendant administered, while minimizing the need for future revision to conform to law changes. Even assuming that De Looze's remarks can be fairly attributed to the legislature, the court cannot discern from the insertion of "revenue" an intention to broaden this court's jurisdiction by the amendments to ORS 305.275(1).

Context provided by the remainder of SB 833, as well as other parts of De Looze's testimony, show that SB 833 did broaden some appeal rights, in addition to clarifying various appeal procedures and consolidating their codification.[14] However, the court finds nothing indicating an intention to include challenges to offsets within the scope of this court's jurisdiction by referring to "revenue and tax" laws.

---

[14] For example, a colloquy in the Senate committee illustrates how the bill would expand appeal rights in a provision dealing with timber property:

> Ted De Looze: "Section 52 deals with the Western Oregon small tract optional tax law, and you remember the 1975 legislature placed in the hands of the State Forester the authority to determine the value of the land and timber? * * * Well, unfortunately the section that deals with the new valuation [did not include] that you have a right of appeal. That's what I mentioned the other day. So we amended that to cover all of the sections of the Western Oregon small tract optional tax so that you they a right to appeal from any determination of the State Forester under that group of statutes."
>
> Sen. Vern Cook: "You mean for the last two years we've had no right of appeal?"
>
> Ted De Looze: "We [the department] say they don't, now the Tax Court may decide that they do. There's an appeal in the Tax Court right now, in the small claims division where we call this to the attention of the court, and the court may determine that there has to be the right of an appeal under for example, due process. They may make a constitutional issue out of it. We want the statute corrected and we've corrected the statute here."

Tape Recording, Senate Committee on Revenue and School Finance, SB 833, Apr 6, 1977, Tape 20, Side 2, 1:07-1:08 (statements of Sen. Vern Cook and Ted De Looze).

Later in the hearing, De Looze answered questions intended to assess the overall impact of the bill on taxpayer rights of appeal. Addressing section 5 (which became ORS 305.275), De Looze indicated that the measure was intended to broaden a taxpayer's right to appeal:

> "This act does not take away anybody's right to appeal, this act creates new rights of appeal. As I told you, there's a very broad provision in here that says that a person can appeal from any act or omission of the department of revenue for which there is no other statutory right of appeal."

*Id*. at 1:15 (statement of Ted De Looze).

B.      *"Tax Laws of this State" Under ORS 305.410 (*Sanok *Step 3)*

Because the court concludes that no statute expressly confers or precludes jurisdiction, step 3 of the *Sanok* framework requires the court to analyze whether the matter arises under the "tax laws of this state." ORS 305.410(1). "Questions which must be resolved in order to decide taxability or the amount of tax do arise under the tax laws." *Sanok* at 697. A "claim is not one 'arising under the tax laws' unless it has some bearing on tax liability." *Id.* at 701. Taxability and a bearing on tax liability are equally relevant in "actions to collect tax amounts due, which arise *after* a tax liability is determined." *Perkins v. Dept. of Rev.*, 22 OTR 370, 374-75 (2017) (concluding that this court lacked jurisdiction to consider taxpayer's claims related to collectability of timber tax warrants, where taxpayer did not dispute the amount of tax assessed).

Here, as in *Perkins*, there is no dispute that Plaintiffs were subject to Oregon personal income tax for the years at issue, nor is there any dispute as to the amount of tax assessed, which for each tax year was less than Plaintiffs had paid. In applying the refund amounts to other debt owed to the state, Defendant did not apply tax laws of the state, but instead exercised the common-law authority of a creditor, as regulated by 293.250(3).[15] The court agrees with Defendant that Plaintiffs' claim has no bearing on Plaintiffs' tax liability or the amount of tax and therefore does not arise under the tax laws of this state. For that reason, the court concludes that it does not have subject matter jurisdiction over this case pursuant to ORS 305.410(1).

---

[15] In *Brown v. Lobdell*, the Court of Appeals stated, "The gist of ORS 293.240 is that uncollectible debts may be assigned to the Department of Revenue for collection and that debts are not to be deemed uncollectible unless a setoff has been considered. This is not a legislative grant of authority, but a recognition that one method of collecting debts of common law is by setoff. Nothing in ORS 293.240 to 293.250 limits the use of setoff, and we see no basis for inferring such a restriction." *Brown*, 36 Or App at 403–04 (referring to earlier codifications of ORS 293.240 and 293.250).

## IV. CONCLUSION AND ORDER

The court concludes that no statute expressly precludes or confers jurisdiction in this court to hear Plaintiffs' claim. Further, Plaintiffs' claim does not arise under the "tax laws of this state" because Plaintiffs' claim does not have any bearing on taxability or the amount of tax liability, which are uncontested. The Oregon Tax Court therefore lacks jurisdiction to hear Plaintiffs' claim. Now, therefore,

IT IS ORDERED that Defendant's Motion to Dismiss is granted.

Dated this 9th day of October, 2025.

10/9/2025 9:35:32 AM

_____

Judge Robert T. Manicke

APPENDIX
ORS 293.250

"(1) There is created a Collections Unit in the Department of Revenue.

"(2) The Department of Revenue may render assistance in the collection of any delinquent account owing to any of the following entities, if the account is assigned by the entity to the department for collection:

"(a) A state agency;

"(b) A public university listed in ORS 352.002, notwithstanding ORS 352.138;

"(c) The Oregon Health and Science University, notwithstanding ORS 353.100;

"(d) A community college or community college district;

"(e) A county, for debts arising pursuant to a judgment obtained under ORS 169.151; or

"(f) The Oregon State Bar, notwithstanding ORS 9.010, for the purpose of collecting assignments to a client security fund established under ORS 9.625.

"(3) The Department of Revenue may render assistance in the collection of any delinquent account owing to any of the following entities, if the account is assigned to the department for the limited purpose of collection through setoff against any refunds or sums due to a debtor from the department or any other state agency:

"(a) Any local government, as defined in ORS 174.116; or

"(b) Any special government body, as defined in ORS 174.117.

"(4)(a) The Department of Revenue may prescribe criteria for the kinds of accounts for which the department will render assistance under subsections (2) and (3) of this section, including a minimum dollar amount owed.

"(b) Nothing in this section requires the department to render assistance in the collection of any delinquent account.

"(5)(a) Subject to rules prescribed by the Oregon Department of Administrative Services for collection of delinquent accounts owing to entities listed in subsections (2) and (3) of this section, the Department of Revenue may render assistance in the collection and shall charge the entities separately for the

cost of assistance. The charges may not exceed the proceeds of collection credited to the entity for the same biennium. The Department of Revenue may designate a single percentage to retain from the proceeds of collection as a charge for the cost of assistance. If the Department of Revenue finds that accounts assigned to the department for collection by a particular entity lack sufficient information to properly and efficiently identify the debtor or that the account information must be put into a form usable by the department in order to efficiently provide collection services, the department may establish a separate percentage charge to be retained from collections for that entity. The charge must reflect the average of the actual cost to provide collection services for all accounts assigned by the entity.

"(b) In providing assistance, the Department of Revenue shall make all reasonable efforts to collect the delinquent accounts. The department may offset any refunds or sums due to the debtor from the department or any other state agency against delinquent accounts assigned to the department for collection under this section.

"(c) No setoff may be made by the Department of Revenue unless the debt is in a liquidated amount.

"(d) At the time any setoff is made, the Department of Revenue shall notify the debtor of the sums due to the debtor from a state agency that are applied against the debtor's delinquent account. The notice must provide that the debtor may, within 30 days and in a manner prescribed by the department, contest the setoff and request a hearing before the department. No issues may be considered at the hearing that were previously litigated or that the debtor failed to raise timely after being given due notice of rights of appeal.

"(e) All moneys received by the Department of Revenue in payment of charges made under paragraph (a) of this subsection shall be paid into the State Treasury and deposited in a miscellaneous receipts account for the department.

"(f) Net proceeds of collections of delinquent accounts shall be credited to the account or fund of the entity to which the debt was originally owing.

"(6)(a) In providing assistance in the collection of any delinquent account under subsection (2) of this section, the Department of Revenue may issue a warrant for the collection of the delinquent account. The warrant may be recorded in the County Clerk Lien Record maintained under ORS 205.130.

"(b) A warrant may not be issued under this subsection unless the debt is in a liquidated amount.

"(c) The amount of any warrant issued under this subsection shall include the amount of the debt, any added penalties or interest attributable to the

delinquent account and any costs associated with recording, indexing or service of the warrant and any satisfaction or release thereof.

"(d) A warrant may not be issued under this subsection before the debtor has been notified that the department intends to issue the warrant and of the collection action that may be taken under the warrant.

"(7) Except as prohibited by federal law and notwithstanding any provision of state law, for purposes of collecting debts assigned to the Department of Revenue under ORS 293.231, the Collections Unit created under subsection (1) of this section has access to all data and other information available to the department for any purpose allowed by law.

"(8) Nothing in this section prohibits the collection of:

"(a) A child or spousal support obligation as provided in ORS 25.610; or

"(b) Criminal judgments that impose monetary obligations, including judgments requiring the payment of fines, costs, assessments, compensatory fines, attorney fees, forfeitures or restitution.

"(9)(a) As used in this section, "state agency" means any state officer, board, commission, corporation, institution, department or other state organization.

"(b) Notwithstanding ORS 182.460, 284.118, 284.375, 377.836, 421.352, 656.753 and 757.552, "state agency" includes semi-independent state agencies listed in ORS 182.454, the Oregon Tourism Commission, the Oregon Film and Video Office, the Travel Information Council, the Children's Trust Fund of Oregon Foundation, Oregon Corrections Enterprises, the State Accident Insurance Fund Corporation and the Oregon Utility Notification Center".